# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | | |
|---|---|---|
| ANTHONIAL IRICK, | * | |
| Petitioner, | * | |
| | | CASE NO. 3:09-CV-90047 CAR |
| vs. | * | 28 U.S.C. § 2255 |
| | | CASE NO. 3:06-CR-32 CAR |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

## REPORT AND RECOMMENDATION

Petitioner Anthonial Irick was indicted in this court on July 20, 2006, charged only with Possession of More the Five Kilograms of Cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii), and 28 U.S.C. § 2. This charge arose out of a routine traffic stop on Interstate 20 on May 8, 2006, at which time a search of Petitioner's truck revealed more than five kilograms of cocaine in a bag in the cab of his truck along with a firearm in the console of the truck. (Doc. 91, Suppression Hrg. at 7, 8). The cocaine charge carried a mandatory minimum sentence of 10 years imprisonment to life upon a conviction. The firearms possession was not at that time charged. The Assistant United States Attorney (AUSA) engaged Petitioner Irick and his counsel in extensive plea negotiations, without success. Petitioner stood on his right to trial by jury. On February 7, 2007, the AUSA obtained a Superseding Indictment, which added a Count Two charging Irick with Possession of a Firearm During a Drug Trafficking Crime in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii). (Doc. 47.)

At jury trial on February 26, 2007, Petitioner Irick elected to testify in his own behalf and testified to the following defense in summary:

> Irick testified that on Saturday May 6, 2006, he delivered in his pick up truck, a washing machine which his father had purchased for his sister in Lithonia, Georgia. Irick had intended to spend Saturday night in Atlanta and return to his home in Orangeburg, South Carolina the next day. However, on Saturday night, he went to a strip club called Magic City, somewhere on the outskirts of downtown Atlanta and did not get back to his sister's apartment until 6:00 or 7:00 o'clock on Sunday morning and decided to sleep. He decided not to leave Atlanta to return home until Monday. Before he left Atlanta, he talked to a friend from South Carolina who asked him to bring a bag he had left in Atlanta to him. The friends name was Johnny Jenkins. Jenkins called a friend of his to meet Irick at a designated location on Irick's route out of Atlanta at an I-20 exit. Kroger's parking lot at the Panola Road exit was decided upon as the meeting place. Irick went to the Kroger's lot and waited for 15 to 20 minutes without contact. He called Jenkins who call his friend and called Irick back to advise that the friend would be another 15 to 20 minutes. Irick advised Jenkins to describe his truck to his friend and tell him to just leave the bag in the truck. Irick then went into Krogers and read birthday cards for about 20 minutes. When he returned to his truck, a black bag was sitting on the driver's seat. He did not look inside the bag, but just threw it onto the crew cab's back seat. He then exited east onto I-20. He was stopped by a Madison County Deputy Sheriff for an alleged traffic violation and was asked if he had guns or drugs in his vehicle. When he answered that he had a gun in the console, the Officer asked if he would consent to a search of the vehicle. Irick gave consent for his vehicle to be searched. The gun was secured and the black bag was found to contain just over 5,000 grams of cocaine powder. Petitioner Irick was arrested and when questioned regarding who had given him the black bag said that he did not know because he never saw him. He would not reveal who he was picking the black bag up for either, "because he got scared, and didn't know what this man was capable of doing or anything."

Trial Trans. (Doc. 88) at pp. 14 -33. Irick's trial ended in verdicts of guilty on both Counts on February 27, 2007. (Docs. 54, 56.) Petitioner was sentenced on May 18, 2007, on Count One to a 120 month term of imprisonment and on Count Two to a term of 60 months imprisonment to be served consecutive to Count One for a total term of imprisonment of 180 months. (Docs. 60, 64). Irick appealed his conviction of the cocaine trafficking charge and the firearm charge. He also appealed the Court's denial of his motion to suppress evidence found as the result of the search of his vehicle. The District Court's judgment and ruling on the motion to suppress were affirmed by the United States Court of Appeals for the Eleventh Circuit on August 21, 2008. (Doc. 105). On February 26, 2009, Petitioner timely filed a Motion To Vacate, Set Aside, or Correct Sentence

2

Pursuant to 28 U.S.C. § 2255. (Doc. 107).

**Petitioner's § 2255 Claims**

As **Ground One** and **Two** of his Motion, Petitioner Irick contends that he was denied due process and effective assistance of counsel. He enumerates eight (8) claims as follows:

> 1) Counsel made prejudicial omissions on viable evidentiary challenges (See Memorandum In Support);
>
> 2) Counsel made conflicting and prejudicial admissions of Movant/Petitioner's guilt before the trial jury during opening and closing arguments (See Memorandum In Support);
>
> 3) Counsel should have argued at trial and on appeal that the prosecutor engaged in misconduct by vindictively prosecuting Movant/Petitioner for exercising his right to trial by jury on the firearms count and for going through with suppression hearing (See Supporting Memorandum).
>
> 3)(sic) Because Movant/Petitioner's conviction and sentence was the product of prosecutorial misconduct in the form of vindictive prosecution as it relates to the firearm count (and for going through with the suppression hearing), Counsel should have sought to have the indictment charging the firearm count dismissed or the conviction overturned (before trial and/or after conviction in district court). Not argued in Supporting Memorandum. See Suppression Hearing Transcript, pg. 5, lines 4-8 in support of the foregoing claim.
>
> 4) Counsel failed to interview and present alibi witnesses that were mentioned by Movant/Petitioner and who were available and willing to provide testimonial evidence and support for defense theory at trial (See Memorandum In Support);
>
> 5) Counsel should have argued for dismissal of indictment under 21 U.S.C. § § 841(a)(1) and (b)(1)(A) after trial and/or argued that Movant/Petitioner should be sentenced under § 841(b)(1)(B) because the trial record and evidence conclusively showed that drug amount was less than 5 kilograms (Not briefed).
>
> 6) Counsel failed to research and prepare for a viable and effective argument for a downward departure under U.S.S.G. § 5H1.4 based on compelling medical health issues substantiated in the PSR;

> 7) Counsel failed to apprise the Court at Sentencing that Movant/Petitioner was being denied his right of allocution under Rule 32 of the Federal Rules of Criminal Procedure.

(Doc. 107 at 4, 5, 7, 8). Petitioner's incorrectly numbered his fourth claim as 3).

Petitioner Irick opened his Memorandum In Support (Doc 108) with a "Procedural Background Summary" which attempts to raise a challenge to the initial traffic stop, the duration of the stop, and his consent to search his vehicle, as Fourth Amendment violations. (Doc. 108 at n 3). However, those issues were raised on direct appeal and decided adversely to Petitioner, and are now barred by the law of the case doctrine[1] and will not be re-litigated in this district court.

The first three paragraphs of Petitioner Irick's Memorandum, "Summary of the Argument(s)" contains general and conclusory statements without specific claims or factual allegations. At the fourth paragraph of this section, however, he makes a cognizable claim. He states, as to his **Claim 1,** that counsel made prejudicial omissions on viable evidentiary challenges**,** as follows:

> First, Irick was denied the right to effective assistance of counsel under the Fifth and Sixth Amendments, based on prejudicial omissions on evidentiary challenges, ... . [at this point, by way of footnote, Irick states the prejudicial omissions to which he refers], stating as follows:
>
> There is conclusive evidence of vindictive prosecution by the government, when on the record of the suppression hearing, the government clearly stated that if Irick pressed the suppression hearing, did not plead guilty, and did not provide substantial assistance, it would file a superseding indictment charging that the firearm was used during and in relation to the drug trafficking crime, even though it stated in the same record that it would stipulate with a guilty plea and cooperation that it was unrelated.

(Doc. 108 at 4) Irick continues with this cognizable claim (while interspersing other vague,

---

[1] The Eleventh Circuit Court of Appeals held in *United States v. Nyhuis,* 211 F.3d 1340, 1343(11th Cir. 2000):The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. *United States v. Rowa,* 663 F.2d 1034, 1035 (11th Cir. 1981). "[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *United States v Natelli,* 553 F.2d 5, 7 (2nd Cir. 1997).

4

conclusory, and unsupported contentions,[2]) as follows:

> [C]ounsel of record for the suppression hearing, was aware that the Government clearly commented on the record, that if petitioner did not forego the suppression hearing and cooperate through entering a U.S.S.G. § 5K1.1 "Substantial Assistance" agreement, it would indict him for the otherwise legal firearm, by tying it with the drugs. To be more specific, the Government states on page 4 of the suppression hearing transcript, that it would "stipulate that the firearm is not related to the five kilograms of cocaine." (Suppression Hearing p. 4, lines 19-25). ... Further, the Government clearly states on the record that if they were to go through the motions (of the suppression hearing), and prevail, they will supersede the original indictment, and add a firearms charge under 21 U.S.C. § 924(c). (Suppression Transcript p. 5, lines 4-8).

Irick's primary claim is that his counsel were ineffective for failing to raise the issue of vindictive prosecution, which, of course, requires proof that vindictive prosecution actually occurred. The AUSA did put the plea offer on the record at the beginning of Petitioner's Motion To Suppress hearing. However, precisely what she stated was that:

> You Honor ... if I may I would like to place on the record the Government's plea offer. ... Your Honor ... the Government's plea offer to Mr. Irick was to plead to the indictment which charges him with ... possession of over five kilos of cocaine.
> The Government would also stipulate that the firearm is not related to the five kilos which would give Mr. Irick an opportunity for a safety valve, an opportunity for a 5K substantial assistance was also offered. As I explained to Mr. Irick, this plea offer has been on the table since his initial appearance which has been several months ago ... The consequences, as I explained to Mr. Irick and his attorney, is that once we go through the motion, if the Government prevails, we will supersede the indictment and add the firearm charge which is a 924(c). ... If convicted at trial of count one and two, Mr. Irick is looking at 15 years minimal mandatory to a maximum term of life. I explained to Mr. Irick that this minimal mandatory is what the Court must impose, that the Court would not have the authority to depart

---

[2]"Conclusory allegations of ineffective assistance are insufficient. *United States v. Lawson,* 947 F.2d 849, 853 (7th Cir. 1991)." *Wilson v. United States,* 962 F.2d 996 (11th Cir. 1992).

downward from statutory minimal mandatories, but the plea offer
ends when we begin this motion to suppress.

Petitioner's counsel then asked him if he understood the plea offer and if he had authorized him to reject that offer. To both questions, Irick answered, "Yes." (Suppression Hearing Trans., Doc. 91 at pp. 4, 5). The suppression motion was denied after a full hearing and the Government obtained a superseding indictment charging Irick with possession of a firearm during the commission of a cocaine trafficking offense. He was convicted of both offenses at jury trial as stated above. Irick bases his claim of ineffective assistance of counsel for not having raised the issue of vindictive prosecution on this scenario. On June 2, 2009, an evidentiary hearing was held to make factual determinations relative as to whether vindictive prosecution actually occurred from which a determination of ineffective assistance of counsel could be made. *See* Evidentiary Hearing Transcript -(Doc. 118). The AUSA was called for cross-examination and testified of that:

> In this particular case it was a traffic stop, and the deputies called DEA and GBI because they thought they might have an opportunity to do a controlled delivery of the 5 kilograms of cocaine. So they called me, and it met our criteria for drug policies given the amount of cocaine that it was and also the fact that he had a firearm. ... Typically on a traffic stop we do not take cases that are under 500 grams of powder cocaine, and there has to be a video of the traffic stop, as well as the narcotics that meet the guidelines. In this case there was the addition of the firearm, which is another of our criteria. ... Usually there is a preference for prosecution involving firearms in narcotics cases, so what we look at is if there is a traffic stop and the individual had in his possession a firearm which either would fit a possession of firearm by a convicted felon, possession of a firearm by a drug user, or possession of a fire arm during an in relation or furtherence of a drug trafficking offense.

*Id.* at 9, 10. The AUSA continued:

> When you have a 924(c), which is the possession of a firearm during and in relation to a drug trafficking offense, if you indict that at the onset, then I don't have the authority to dismiss that count and allow the person to plead to count one without having an extraordinary

6

> reason to give to my division chief saying that, you know, there is no connection. ...
> So typically what I do, and, you know, it's my way of giving some chance to the defendant, I typically will indict the drug charge, which in this case was pretty serious, it was a 10 to life, minimal mandatory of 10, and then have an opportunity for this defendant to get an attorney or hire a lawyer and have a chance for the attorney and I do discuss plea possibilities, because I already know that with over five keys – kilos of cocaine, I'm looking at a minimal mandatory of 10 years. If I immediately indict the 924(c), that's a consecutive 5 years that is mandatory consecutive. So it makes it a lot harder on the plea negotiations. So in this case I opted to first go with the drugs and then negotiate with defense counsel, and if it didn't work out, then you supersede at some point, and you go to trial.

*Id.* at 14, 15. Petitioner's counsel at the § 2255 hearing asked the AUSA, "Are there instances where you do not indict the gun charge originally and then plea negations fail and then you still decide not to indict the gun charge?" The AUSA answered, "Not usually." *Id.* at 21, 22. The AUSA testified that she continued the delay in indicting the gun charge, saying:

> [I]n this case, I wanted Mr. Thornton [Petitioner's counsel] to talk to Mr. Irick immediately because we had the issue of the firearm, and there's only so long that I can postpone something because of plea negotiations. ... [M]y theory is once I give the plea offer to Mr. Thornton, then we are essentially in plea negotiations, and it gives Mr. Thornton an opportunity to talk to Mr. Irick, and my theory was that I knew he was looking at a 10-year minimal mandatory. And Mr. Thornton could tell his client, if you plea to this, I have saved you 5 years, which is a significant amount.
> And then I also offered Mr Thornton that I would stipulate that the firearm was not related so that his client would qualify for safety valve. If I didn't have that stipulation, then he couldn't get safety valve, and I wasn't certain Mr. Irick could be successful in a 5K.
>
> [W]hat I explained to Mr. Thornton is this was limited in time, and once we started a motion to suppress that plea offer was going to change, which it did.

*Id.* at 37, 38. In response to Petitioner's counsel's question, "At the beginning of the suppression hearing, did you state on the record what your plea offer had been and the fact that you were

withdrawing it as soon as the suppression hearing began?" The AUSA answered:

> Yes, I do. That way I'm certain in my mind that the defendant knows what the plea offer was and I don't have an issue late on, which has occurred on me, where the defendant says, my attorney never told me what the plea offer was, had I known, I would have taken it.

*Id.* at 42. Finally, on cross examination, in explaining her action, the AUSA, stated, "[T]o be perfectly honest with you, I've yet to lose a plea, and I can lose a trial. So most of us, I think, if you're able to resolve the case by way of plea, you're going to try to resolve it." *Id.* at 43.

On direct examination, the AUSA was asked what was her motivation for presenting the plea offer to Mr. Irick, to which she answered:

> Well, being able to get a plea resolution. ... Granted, a trial is legalized gambling, but given the evidence, I firmly believed that he was going to be convicted of both.

*Id.* at 54. Counsel asked on direct, "Were you in any way motivated in your decision to supersede the indictment by any ill will toward him [Petitioner Irick] or any anger at his decision to go forward with the motion to suppress and the trial?" The AUSA answered: "No, I mean, it's a case. I understand it's very important to Mr. Irick, but this is a case like many others, ... ." *Id.* at 56.

Petitioner's trial Attorney Joshi was called to testify under cross-examination at the evidentiary hearing, and he was asked if he had learned of plea options before his involvement in the case. Mr. Joshi answered:

> [W]hat I understood was that prior to the motion to suppress, the plea offer – the gun count had not been included in the indictment, and there was – the option of safety valve was open to Mr. Irick prior to the motion to suppress. That's how I understood it, and that after the motion to suppress, the safety valve option was no longer available.

*Id.* at 79. Mr. Joshi was asked if he had any information as to why after the motion to suppress that option was no longer going to be available, to which he answered:

> Nothing specific. My understanding was it simply was a function of, as cases progress and sometimes offers change, depending on what attorneys do in the case.

*Id.* Together with the circumstantial evidence that the AUSA delayed obtaining a superseding indictment to include the gun possession charge along with the possession of more than 5 kilograms of cocaine, until plea negotiations completely failed, the foregoing is the extent of the evidence in support of Petitioner's claim of vindictive prosecution.

Petitioner Irick argues ineffective assistance of his counsel for having failed to litigate the vindictive prosecution issue when the prosecutor employed her customary practice in drug and gun cases to withhold immediate prosecution of the gun charge to enhance plea negotiations and avoid trial, which she felt begins with a defendant's motion to suppress. He argues that such conduct amounts to punishment and retaliation, in this case, for Irick's insistence on going through with his motion to suppress and on to trial. Irick first cites *North Carolina v. Pearce,* 395 U.S. 711 (1969) in support of his argument. However, *Pearce* involved a court re-sentencing after a successful appeal to three times Pearce's original sentence without explanation. The Supreme Court found due process denied in Pearce's re-sentencing and vindictive prosecution in the second sentence. However, *Pearce* does not represent the situation in Irick's case. Irick relies on *Blackledge v. Perry,* 417 U.S. 21 (1974) which also found due process violations in bringing more serious charges against a defendant who exercised his right to appeal a former conviction.

Both parties cited *United States v. Goodwin,* 457 U.S. 368 (1982) which clarified pretrial/post-trial distinctions holding that in pretrial context a prosecutor has the discretion to charge the defendant with a more serious existing offense provided that the purpose must not be solely for punishment for exercising a constitutional right. *Id.* at 383.

The case most directly on point with the issue in Irick's case, and also cited by both parties,

is *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S. Ct. 663 (1978), which queried:

> [Is] the Due Process Clause of the Fourteenth Amendment [ ] violated whan a state prosecutor carries out a threat made during plea negotiations to reindict the accused on more serious charges if he does not plead guilty to the offense with which he was originally charged."

*Id.* at 358, 98 S. Ct. at 665. The *Bordenkircher* Court held:

> In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, is generally entirely in his discretion. Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. " [citation omitted] ... To hold that the prosecutor's desire to induce a guilty plea is an "unjustifiable standard," which, like race or religion, may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself. ... See *Blackledge v. Allison,* 431 U.S., at 76, 97 S. Ct., at 1630. ...
>
> We hold only that the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment.

*Bordenkircher,* at 669. The facts and circumstances of Irick's pretrial plea negotiations fail to indicate vindictive prosecution and therefore fail to meet either prong of the *Strickland* test for ineffective assistance of counsel. Moreover, there is no viable evidence in the record of this case to support vindictive prosecution. Petitioner's claim of ineffective assistance of counsel for failure to litigate vindictive prosecution has no merit.

To prevail on a claim of ineffective assistance of counsel, a movant bears the burden of establishing by a preponderance of the evidence that his attorney's performance was deficient and that he was prejudiced by the inadequate performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000). To establish deficient

performance, a defendant must prove that his counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. There is a strong presumption that the challenged action constituted sound trial strategy. *Chatelain v. Singletary*, 89 F.3d 749 (11th Cir. 1996). In order to show that counsel's performance was unreasonable, a petitioner must show that no competent counsel would have taken the action in question. *Van Poyck v. Florida Department of Corrections*, 290 F.3d 1318 (11th Cir. 2002). To satisfy the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the proceedings would have been different. *Mills v. Singletary*, 63 F.3d 999 (11th Cir. 1995); and *Meeks v. Moore*, 216 F.3d 951 (11th Cir. 2000). If a defendant fails to establish that he suffered prejudice as a consequence of the alleged ineffective assistance, a court need not address the performance prong of the Strickland test. *Holiday v. Haley*, 209 F.3d 1243 (11th Cir. 2000).

Counsel cannot be considered ineffective for failing to raise claims that lack merit. *See Alvord v. Wainright,* 725 F.2d 1282, 1291 (11th Cir. 1984). The Eleventh Circuit Court of Appeals stated in *Rogers v. Zant,* 13 F.3d 384, 386 (1994):

> The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). To establish prejudice, the Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. ... When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." *Atkins v. Singletary*, 965 F. 2d 952, 958 (11th Cir. 1992). And, "a court should be highly deferential to those choices ... that are arguably dictated by a reasonable trial strategy." *Devier v. Zant*, 3 F.3d 1445, 1450 (11th Cir. 1993). Even if many reasonable lawyers would not have done as

> defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioner's to bear, is and is supposed to be a heavy one.

Petitioner Irick's claim that his counsel made prejudicial omissions on viable evidentiary challenges which have not been sufficiently identified to require addressing. Vague and conclusory allegations of ineffective assistance are insufficient. *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991); *Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992). All of Irick's such vague and unsupported claims are without merit.

Irick claims that his counsel made conflicting and prejudicial admissions of Movant/Petitioner's guilt before the trial jury during opening and closing arguments. In his Memorandum in Support of his Motion, Irick footnotes that, "Trial counsel expressed to the court and the jury that Irick was a mere dupe, was not told, and did not know that there were drugs placed in the gym bag he was asked to drop off on his way home from Atlanta to South Carolina." (Doc. 108 at 9). Petitioner Irick cannot complain of this statement, because it is exactly the defense he presented through his own trial testimony, the only defense presented. Counsel cannot be ineffective for arguing the only evidence Irick furnished to him. Irick argues that counsel should have called alibi witnesses to this proposition, to wit., the sister to whom he had delivered a refrigerator purchased for her by his father. No where in the record or in Irick's trial testimony does he assert that either of these people could testify to how the drugs came into his possession or whether he knew the contents of the gym bag. It is not at all apparent how either of these persons could have helped in the defense of Petitioner's case. Counsel explained his strategic reasoning for not calling Irick's sister. Attorney Arora testified at the § 2255 hearing that, "[W]ith regard to what the sister would testify to, and I don't recall what it was, but there was something that was inconsistent with what Irick had told her and what she might testify to is my understanding, and that

is why we didn't call her..." (Doc. 118 at 107, 108).

Irick complains that Mr. Arora stated to the jury in closing argument that he did not disagreed with 99% of what the prosecutor had said. Mr. Arora testified at the § 2255 hearing:

> I would agree. The only issue was, did he know if the drugs were in the car. There was never a dispute as to how they may have gotten there, what the facts and circumstances were, whether he was in Atlanta for 20 minutes or overnight or any of those kind of things. It really all came down to, did he know that there were drugs in the bag. And maybe I could have used better language, but you don't want to minimize what's going on in front of a jury that it looks like you're arguing foolish points. And to be frank, we did agree with everything Ms. Jarrett was saying, aside from he just didn't know and then the debate became is that deliberately ignorant or not, and really that's what it came down to.

Petitioner Irick did not testify to any different scenario at the § 2255 hearing or contradict either attorney regarding the defenses available in the case. Irick fails to show how he was harmed by any statement by his attorney Arora.

Irick claims that his Attorney Joshi's was ineffective for misspeaking in his opening statement, when he said:

> And I expect when you have heard the evidence and when the witnesses have concluded what they have – their testimony and the attorneys have concluded their arguments, that you will find Mr. Irick guilty.

Attorney Joshi immediately stated:

> Excuse me, I apologize, years as a prosecutor have led me to always say that in my opening statement. I conclude that you will find Mr. Irick not guilty of both counts of this indictment. Thank you, ladies and gentlemen.

(Doc. 87 at 22). The explanation immediately given by Attorney Joshi was adequate to inform the jury that Attorney Joshi had simply misspoken. This was an obvious slip of the tongue. The jury was left to hear the evidence and decide the guilt or innocence of Petitioner Irick, that was not the

13

decision of either the prosecutor or the defense attorney. Petitioner can show no harm in this misstatement; its having been corrected. His claim of ineffective assistance of counsel in this regard cannot be shown to have changed the outcome of the case. Moreover, in its final instructions to the jury the court charged the jury that, "Remember that anything the lawyers say is not evidence in the case." *Id.* at 96.

Irick claims that counsel should have argued for dismissal of indictment under 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) after trial and/or argued that Movant/Petitioner should be sentenced under § 841(b)(1)(B) because the trial record and evidence conclusively showed that drug amount was less than 5 kilograms. Irick's claim that the record conclusively showed that the drug amount was less than 5 kilograms is disproved by the trial record during the testimony of Carlos Diaz who was qualified as a forensic chemist, who determined that the substance was cocaine of 82% purity, and weighed 5002 grams. (Doc. 87 at 90 - 99). Moreover, Defense Attorney Arora questioned the witness as to the actual amount of cocaine considering that the purity was 82% and noted that the witness's report acknowledged that the resultant amount of actual cocaine was 4101 grams. *Id.* at 101. At the § 2255 hearing, Attorney Arora testified that he was satisfied with the charged weight of the cocaine. (Doc. 118 at 110). The charged statutes, 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii) describes the prohibited substance as, "5 kilograms or more of a mixture or substance containing a detectable amount of (II) cocaine, its salts, optical and geometric isomers, and salts of isomers." The record did established that the proper weight of the substance charged. Moreover, counsel were defending Petitioner Irick on his defense theory that he did not know what the gym bag contained and that he was only delivering it to a friend as a favor. Irick cannot show that his counsel were ineffective for not contesting the amount of cocaine involved, or that he was prejudiced in view of his theory of defense.

Irick claims that counsel was ineffective for failing to research and prepare a viable and effective argument for a downward departure under U.S.S.G. § 5H1.4 based on compelling medical health issues substantiated in the PSR. The sentencing hearing established that the lowest possible sentence which Petitioner Irick could receive from the District Court was 15 years, because of the minimum mandatory 10 years on Count I and the mandatory consecutive 5 years on Count II. (Doc. 89 at 2). Petitioner's argument in this claim fails to appreciate that the absolute only concession his attorney could have gotten in Petitioner's sentence was the one month difference between the sentencing guideline calculation and the statutory mandatory minimum sentences. The PSR showed the Guideline considerations that resulted in a calculation of 121 months to 151 months for Petitioner's conviction on Count One, while the statutory mandatory minimum sentence under 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii) was 10 years or 120 months. Attorney Arora managed to talk the court into sentencing Petitioner Irick to the statutory minimum mandatory sentences on both Counts resulting to the take off the extra month minimum according to the Sentencing Guidelines. *Id.* at 8, 9, 14. The court was made fully aware of Petitioner's health condition through the entries in the PSR, Attorney Arora, Petitioner's father, and Petitioner's written statements at sentencing, although the court acknowledged that he was constricted as to what he could do about it, that it was a matter for consideration and attention for the Bureau of Prisons. *Id.*

Petitioner Irick has not shown that his counsel could have done anything in regard to his health to effect any change in his sentence other than the one month which counsel achieved. Irick fails to show how he was prejudiced by counsel's approach to his health issues. Irick's claim of ineffective assistance of counsel in regard to his health matters have no merit.

Irick's last claim for relief under his § 2255 motion is that his counsel were ineffective in failing to secure his right to allocution at sentencing. At sentencing the court received written

15

objections/propositions from Petitioner Irick which the court read and commented on individually.

The court stated, "I got the idea that the Defendant essentially filed these objections; is that correct."

(Doc. 89 at 3). Attorney Arora responded:

> Well, we discussed with our client and his family his objections, while they are important to us and him, unfortunately in a mandatory situation once you get safety valve or a 5K, really become academic. But he still wanted to address the Court with these issues so we submitted those. And I'll have him address those points that are of concern to him.

*Id.* After reviewing Petitioner's written objections/submissions, the court stated:

> Well, there is a proposition about him being a victim in the case. I understand his argument, but clearly that's not what is contemplated by the guidelines. And there is the issue about acceptance of responsibility. Clearly that wouldn't apply in this case because the way I understand it, even to this day, he's denying that he committed a crime. ...
> Now we are going to take up the matter of the health in just a minute. But Mr. Irick, is there anything that you want to say about any of these propositions? I have read what you said. I have analyzed it. And I'm overruling those, but I'm certainly going to give you the opportunity to respond. You don't have anything you want to say on that?

*Id.* at 4, 5. Petitioner Irick answered, "No, sir." *Id.* The sentencing transcript indicates clearly that the court was not denying Petitioner Irick any right to allocution. The record indicates that Irick had put everything he wanted to say in writing and the court read it thoroughly. Moreover, regarding whether Irick had any reason to think that he could not speak at the sentencing hearing, his counsel testified at the § 2255 hearing that:

> [W]hile I don't have a specific recollection, my recommendation to Mr. Irick would have been, after the jury convicted you, not to come in and say something like, I was holding it for a friend or I was doing a favor, because then, theoretically, the judge could give you an enhancement for arguably not telling the truth on the stand ... and it wouldn't accomplish anything. ...
> So it is better to stay mute and then fight for it on appeal, versus admitting, I did it, and therefore somewhat undermine your appeal.

16

> So the idea was protect yourself for appeal. Certainly there were issues with the search and all those things we could raise on appeal, ... It would have made no difference had he admitted or done anything ... at the sentencing because we got the one month we were looking for and that's all we could get.

(Doc. 118 at 112, 114). The controlling precedent on Petitioner's claim that his counsel was ineffective for failing to object to his denial of the right to allocution is *Gordon v. United States,* 518 F.3d 1291 (11th Cir. 2008), wherein the Circuit Court ruled:

> The Supreme Court has held that the failure to inquire about the right to allocute is not redressable in habeas absent proof that the denial prejudiced the petitioner. In *Hill v. United States,* the Court held that "the failure to follow the formal requirements of Rule 32(a) [now Rule 32(c)] is not of itself an error that can be raised by collateral attack." 368 U.S. 424, 426, 82 S. Ct. 468, 470 (1962). The Court insisted, in strong terms, that the error is not a fundamental defect:
>
>> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentencing is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure.
>
> *Id.* at 428, 82 S. Ct. at 471. More recently, the Supreme Court broadened the applicaton of this principle to "a general rule [ ] that a court's failure to give a defendant advice required by the Federal Rules is a sufficient basis for collateral relief only when the defendant is prejudiced by the court's error." *Peguero v. United States,* 526 U.S. 23, 27, 119 S. CT. 961, 964 (1999). If we held that counsel's failure to object to an absence of inquiry about the right to allocute amounts to ineffective assistance of counsel per se, we would run afoul of these holdings of the Supreme Court.

*Gordon,* 518 F.3d at 1300, 1301. In Petitioner Irick's case, the court was limited by statute to mandatory minimum sentences on each of the two counts of which Irick was convicted. Irick received the lowest possible sentence that the court could render. Since Irick cannot show prejudice, he cannot show that his counsel's failure to object to the absence of inquiry about his right to allocute amounted to ineffective assistance. When an ineffective assistance claim

17

rests entirely on counsel's failure to object to an absence of inquiry about the right to allocute, a defendant must establish actual prejudice based on the denial. There can be no per se rule that counsel's failure to object to a denial of the right to allocute amounts to ineffective assistance.

**WHEREFORE, IT IS RECOMMENDED** that Petitioner Irick's Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 be DENIED for failure to state a cause upon which relief may be granted. Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN FOURTEEN (14) DAYS after being served with a copy hereof.

**SO RECOMMENDED** this 12th day of May 2010.

                                              **S/G. MALLON FAIRCLOTH**
                                              **UNITED STATES MAGISTRATE JUDGE**